UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SPENCER NOWINSKI,

                                        Plaintiff,

                                                                Case # 14-CV-6559-FPG

v.

                                                                DECISION & ORDER

GERALD CONIGLIO, et al,

                                        Defendants.

## INTRODUCTION

*Pro se* plaintiff Spencer Nowinski ("Plaintiff") brings this action under 42 U.S.C. § 1983 against ten defendants ("Defendants") alleging violations of his Eighth Amendment rights. ECF No. 1. Before the Court are Plaintiff's Motion for Preliminary Injunction, Defendant Dolan's Motion to Join the Motion to Dismiss, Defendants' Motion to Dismiss, and Defendants' Motion for Summary Judgment. ECF Nos. 6, 23, 26. For the reasons discussed below, Plaintiff's Motion for Preliminary Injunction (ECF No. 6) is DENIED, Defendant Dolan's Motion to Join the Motion to Dismiss (ECF No. 26) is GRANTED, Defendants' Motion to Dismiss (ECF No. 23) is GRANTED in part and DENIED in part, and Defendants' Motion for Summary Judgment (ECF No. 23) is DENIED.

## BACKGROUND[1]

Fifteen years ago, Plaintiff tore his anterior cruciate ligament ("ACL"). ECF No. 1 at 3. Plaintiff did not seek medical treatment for that injury until February 2002, when he was arrested and incarcerated in Cattaraugus County Jail. *Id.* Over the next nine years, Plaintiff received treatment periodically. *Id.* at 3-5. During that time, Plaintiff was transferred to and from various

---

[1]      This recitation of the facts is taken from the factual allegations in Plaintiff's Complaint. ECF No. 1.

correctional facilities. *Id.* The treatment he received included knee surgery in 2003 and a number of prescriptions for pain medication between 2003 and 2011. *Id.* at 4. Despite that treatment, Plaintiff's knee pain continued, and indeed increased, over time. *Id.* at 5.

On October 26, 2011, Defendant Coniglio, an orthopedist, performed Plaintiff's second knee surgery. *Id.* Defendant Coniglio replaced Plaintiff's right knee with a "significantly oversized prosthesis." *Id.* Nineteen days after the surgery, Plaintiff met with a prison nurse and explained that he was experiencing excruciating pain in his knee. *Id.* Plaintiff asked the nurse to arrange a consultation between him and Defendant Coniglio. *Id.* Additionally, Plaintiff wrote letters to Defendant Rao, a prison physician, complaining of the persistent pain. *Id.*

On November 28, 2011, Plaintiff still had not yet received a response from Defendant Coniglio or Defendant Rao. *Id.* For that reason, Plaintiff went to the facility clinic. *Id.* There, he spoke to Defendant Drankhan, a prison nurse. *Id.* He asked Defendant Drankhan why his pain medication was discontinued, why he had not been prescribed physical therapy, and why he had not yet had a consultation with Defendant Coniglio. *Id.* Defendant Drankhan did not answer Plaintiff's questions, but instead recommended that Plaintiff stop using his crutches to help his knee regain strength. *Id.* Defendant Drankhan noted in an Ambulatory Health Record that Plaintiff could "ambulate with difficulty." *Id.* at 6.

Sometime after his surgery, Plaintiff wrote a letter to Defendant Koenigsmann, the Deputy Commissioner. *Id.* at 9. On August 28, 2012, Plaintiff received a letter from Defendant Dinisio, the Regional Health Services Administrator. *Id.* Defendant Dinisio noted that Defendant Koenigsmann asked her to respond to Plaintiff's concerns. *Id.* Defendant Dinisio also noted that she spoke to Defendant Michalek, a nurse administrator at Attica Correctional Facility, and Defendant Michalek told Defendant Dinisio that Plainitff had been "evaluated by

his primary care provider recently."[2]  *Id.*  Defendant Dinisio informed Plaintiff that physical therapy was not "medically necessary."  *Id.*

Ten days after receiving Defendant Dinisio's letter, Plaintiff met with Defendant Graf, a prison nurse.  *Id.*  Defendant Graf told Plaintiff she could prescribe him physical therapy and pain medication.  *Id.*  But Plaintiff expressed concern about seeing a physical therapist, given the amount of pain he was experiencing, before seeing an orthopedist.  *Id.*  Defendant Graf explained that she could not arrange for Plaintiff to see an orthopedist, noted that she could prescribe physical therapy and pain medication, and insisted that Plaintiff take the pain medication and complete the physical therapy.  *Id.* at 7.

On October 15, 2012, Plaintiff saw Defendant Dolan, a prison physician.  *Id.*  Defendant Dolan told Plaintiff that, per "Albany's directive," he could only prescribe a certain number of weeks of physical therapy.  *Id.*  Plaintiff asked Defendant Dolan if he should see a specialist.  *Id.*  Defendant Dolan told him no—that "Albany" would not approve his request to see a specialist.  *Id.*

Three days later, Plaintiff consulted Defendant Nyoni, a physical therapist.  *Id.* at 7.  He explained to Defendant Nyoni that he was in substantial pain, and that physical therapy exacerbated that pain.  *Id.* at 8.  Plaintiff asked Defedant Nyoni if he should see a specialist for pain management.  *Id.*  Defendant Nyonia told Plaintiff he would speak to Defendant Kooi, the Regional Director, about it.  *Id.*  Plaintiff continued physical therapy for months, despite the pain it caused him.  *Id.*  Defendant Nyoni never contacted Defendant Kooi.  *Id.*

After Defendant Dolan retired, Plaintiff began to see Defendant Kooi regularly.  *Id.* at 8.  Defendant Kooi told Plaintiff that "these kinds of things happen with total knee replacements."

---

[2]      Defendant alleges that this is incorrect—he had not seen a doctor since his surgery in October 2012.  ECF No. 1 at 6.

*Id.* When Plaintiff asked Defendant Kooi if he could refer Plaintiff to a specialist, Defendant Kooi responded, "Albany won't do it." *Id.*

## DISCUSSION

### I.    Plaintiff's Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction to have Defendants accommodate his limited mobility by housing him in a cell where he is not required to climb stairs and by allowing him to shower in a handicap-accessible shower stall.  ECF No. 6.  At the time Plaintiff filed his Motion for Preliminary Injunction, Plaintiff was housed at Elmira Correctional Facility.  *Id.*  But since that time, Plaintiff has been moved to Five Points Correctional Facility.  ECF No. 24.   At Five Points, Plaintiff is housed in a cell on the first floor, where he is not required to climb stairs,  he sleeps in a bottom bunk, and he has access to a handicapped-accessible shower.  ECF No. 22 at 1-2.  Further, in the event that he must change floors, the facility has an elevator.  *Id.* at 2. Indeed, since arriving at Five Points, Plaintiff has not made any requests for additional accommodations.  *Id.* at 3.  For that reason, Plaintiff's Motion for Preliminary Injunction is denied as moot.

### II.    Defendant Dolan's Motion to Join Previous Motion to Dismiss

Defendant Dolan has moved to join the motions, currently pending before the Court, filed by his co-defendants.  ECF No. 26.  Defendants filed their Motion to Dismiss and Motion for Summary Judgment on December 15, 2015.  ECF No. 23.  At that time, Defendant Dolan had not yet been served.  ECF No. 28.  The Motion to Dismiss notes that Defendant Dolan had not yet requested representation, and for that reason the Motion to Dismiss was not made on his behalf.  ECF No. 23 at 2 n.1.  But the Motion also anticipates that, once served, Defendant Dolan would request representation and seek to join portions of the Motion.  *Id.*  Defendant Dolan was

4

served on December 23, 2015, ECF No. 28, and requested to join the Motion to Dismiss two weeks later.  ECF No. 26.  Because Defendant Dolan's joining the Motion to Dismiss will not prejudice Plaintiff, Defendant Dolan's Motion to Join Previous Motion to Dismiss is granted.

## III.   Defendant's Motion to Dismiss

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against Defendants Coniglio, Drankhan, and Michaelek, all malpractice claims, and all claims brought against Defendant Koenigsmann in his individual capacity.  To succeed, Defendants must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Plausibility "is not akin to a probability requirement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  Rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they

contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.").

Plaintiff has sought relief under 42 U.S.C. § 1983. *See* ECF No. 1. Section 1983 imposes civil liability on any person who, under the color of state law, deprives another person of any federal or constitutional "rights, privileges or immunities." 42 U.S.C. § 1983. Here, Plaintiff alleges Defendants violated his Eighth Amendment right in treating his knee injury. ECF No. 1. In order to sustain such a claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Chance v, Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). This standard includes both an objective and subjective prong. "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)) (internal quotation marks omitted). Second, Plaintiff must establish that Defendants acted "with a sufficiently culpable state of mind." *Id.* The second prong is satisfied when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Defendants move to dismiss several portions of Plaintiff's Complaint. ECF No. 23. First, Defendants move to dismiss Plaintiff's malpractice claims. Second, Defendants move to dismiss all claims against Defendants Coniglio, Drankhan, and Michalek. Finally, Defendants move to dismiss the claims brought against Defendant Koenigsmann in his individual capacity. For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part.

### a.  Malpractice Claims

First, Defendants argue that Plaintiff's "malpractice claims" should be dismissed. ECF No. 23-4 at 10. Defendants assert that such claims *cannot* sustain a § 1983 cause of action. *Id.* The Court disagrees. As an initial matter, this argument misconstrues Plaintiff's claim. Plaintiff articulates the constitutional basis for his § 1983 claim as "[Eighth] Amendment—Cruel and Unusual Punishment, Deliberate Indifference, and [Mal]practice." ECF No. 1 at 1. Plaintiff is not attempting to obtain relief under § 1983 on the basis of malpractice; rather, he is describing the factual allegations underlying his Eighth Amendment claim. Further, while Defendants are correct that medical malpractice is not always sufficient to sustain a § 1983 claim rooted in an Eighth Amendment violation, it is also true that "not every instance of medical malpractice is, *a priori,* precluded" from constituting an Eighth Amendment violation. *Hathaway*, 99 F.3d at 553. A plaintiff can state a claim for § 1983 relief on the basis of an Eighth Amendment violation rooted in medical malpractice where the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 291 (1976). For that reason, Defendants motion to dismiss indiscriminately Plaintiff's "malpractice claims" is denied.

### b. Defendants Coniglio, Drankhan, and Michalek

Next, Defendants argue that the Court should dismiss the claims against Defendants Coniglio, Drankhan, and Michalek because Plaintiff has failed to allege that these defendants acted with sufficiently culpable states of mind. ECF No. 23-4 at 10-11. Specifically, Defendants argue that Plaintiff has failed to allege that Defendants Conigilio, Drankhan, and Michalek knew of and consciously disregarded a risk to Plaintiff's health or safety, ECF No. 23-4 at 10-11. The Court agrees with Defendants. To be found liable of an Eighth Amendment violation under § 1983, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Indeed, the official must "be aware of facts from which the

7

inference could be drawn that a substantial risk of serious harm exists" and also "draw the inference." *Id.* That is because the Eighth Amendment bans cruel and unusual "punishments," not merely "conditions." *Id.* Thus, to state a claim for relief, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 291.

To that end, medical malpractice resulting from mere negligence does not offend the Eighth Amendment. *Chance*, 143 F.3d at 703. It is deliberate indifference that elevates ordinary medical malpractice to the level of an Eighth Amendment violation. *Id.* Medical malpractice evinces deliberate indifference "when the malpractice involves culpable recklessness." *Id.* (quoting *Hathaway*, 99 F.2d at 553). In that regard, the Second Circuit has found deliberate indifference where a physician consciously chose "an easier and less efficacious" treatment plan. *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (finding the plaintiff's allegations that prison physicians refused to suture a severed portion of his ear, instead telling him "he did not need his ear," throwing the severed organ away, and sewing up the remaining stump with ten stitches were sufficient to state a claim rooted in an Eighth Amendment violation). Similarly, the Second Circuit has found deliberate indifference where two physicians undertook a course of treatment "not on the basis of their medical views, but because of monetary incentives." *Chance*, 143 F.3d at 703 (finding the plaintiff's allegations that prison dentists unnecessarily pulled several of his teeth because they would be "paid extra" for the extractions was sufficient to demonstrate that the physicians had a culpable state of mind and their choice of treatment was intentionally wrong). Here, Plaintiff fails to allege that Defendants Drankhan, Coniglio, and Michalek acted with deliberate indifference to his serious medical needs.

First, Plaintiff alleges that, when he returned his crutches, Defendant Drankhan examined him and noted in an Ambulatory Health Record that Plaintiff could "ambulate with difficulty." ECF No. 1 at 6. Plaintiff does not allege Defendant Drankhan made that note because of an improper motive, or that he had any other contact with Defendant Drankhan whatsoever. Further, Plaintiff does not allege that Defendant Drankhan's note was inaccurate or untruthful. At bottom, Defendant Drankhan's note—that Plaintiff could move without crutches but with some difficulty—does not demonstrate deliberate indifference to Plaintiff's serious medical needs. On that basis, Plaintiff's claim against Defendant Drankhan is dismissed.

Second, Plaintiff alleges Defendant Michalek spoke to Defendant Dinisio and stated that Plaintiff had recently been evaluated by his primary care provider. ECF No. 1 at 6. Plaintiff alleges that Defendant Michalek's statement was false—he had not seen a doctor around that time. ECF No. 1 at 6. But that is not enough to demonstrate deliberate indifference to Plaintiff's serious medical needs. At most, Plaintiff's allegations indicate that Defendant Michalek provided incorrect information to Defendant Dinisio. Plaintiff's allegations do not indicate that Defendant Michalek did so because of an improper motive or with such extreme carelessness as to rise to the level of deliberate indifference. Simply put, providing incorrect information is not enough to establish a constitutional violation. *See Moore v. Casselberry*, 584 F. Supp. 2d 580, 582 (W.D.N.Y. 2008) ("[E]ven if the report was incomplete or false, that does not state a federal constitutional violation. There is no basis for a constitutional claim alleging the mere filing of a false report. There is also no indication in the record that [the defendant] falsified her report out of deliberate indifference to plaintiff's serious medical needs, or out of any improper motive."). Plaintiff's claim against Defendant Michalek is therefore dismissed.

Third, Plaintiff alleges Defendant Coniglio "performed a total new knee replacement operation" during which he replaced Plaintiff's knee with a "[s]ignificantly [o]ver[s]ized" prosthesis. ECF No. 1 at 5. Plaintiff further alleges that he has suffered "pain and other medical problems" as a result of the oversized prosthesis. *Id.* at 9. But Plaintiff does not allege that Defendant Coniglio consciously chose to replace his knee with an oversized prosthesis. Plaintiff does not allege that Defendant Coniglio used an oversized prosthesis because it was less expensive or more convenient. Nor does Plaintiff allege that Defendant Coniglio performed the surgery in such a reckless manner as to give rise to constitutional culpability. At best, Plaintiff's allegations suggest that Defendant Coniglio was negligent. But negligence is not enough to sustain his Eighth Amendment claim against Defendant Coniglio. *See Chance*, 143 F.3d at 703. On that basis, Plaintiff's claim against Coniglio is dismissed.

### c. Defendant Koenigsmann

Finally, Defendants argue that the Court should dismiss Plaintiff's claims against Defendant Koenigsmann in his individual capacity. ECF No. 23-4 at 13-15. Defendants argue that Plaintiff does not allege Defendant Koenigsmann was personally involved in the constitutional violation. *Id.* at 13. The Court agrees. "Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to [that defendant's] liability on a claim for damages under § 1983." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). A supervisor may be found to be personally involved in a constitutional violation if he or she "(1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appear; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). But

as a general rule, "an official does not become personally involved by merely forwarding a prisoner's complaint to a subordinate." *Smith v. Fischer*, No. 13-CV-6127, 2016 WL 3004670, at *7 (W.D.N.Y. May 23, 2016).

Here, Plaintiff alleges Defendant Koenigsmann "failed to respond to Plaintiff['s] number letters . . . either in a timely manner []or issued no response at all." ECF No. 1 at 11. Specifically, Plaintiff alleges he wrote to Defendant Koenigsmann but Defendant Koenigsmann "brushed [Plaintiff] off [and] turned [his] medical concerns over to someone who isn't an R.N." ECF No. 1 at 9. That is not enough to support a § 1983 claim against Defendant Koenigsmann. A supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official. *See, e.g., Sealey,* 116 F.3d at 51 (finding a prison official who received inmate's letter but forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); *Jones v. Fischer,* No. 11–CV–774, 2013 WL 4039377, at *10 (N.D.N.Y. Aug. 7, 2013) ("[R]eceipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement."); *Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y. 2006) (finding the failure of a supervisory prison official to take action in response to letters complaining of unconstitutional conduct was insufficient to demonstrate personal involvement). To the extent that Plaintiff seeks to hold Defendant Koenigsmann liable for failing to investigate his complaints, the law is settled that "inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *McCloud v. Prack*, 55 F. Supp. 3d 478, 481 (W.D.N.Y. 2014) (internal quotation marks omitted). For that reason, Plaintiff's claims brought against Defendant Koenigsmann in his individual capacity are dismissed.

**IV.    Defendant's Motion for Summary Judgment**

Defendants also move for summary judgment under Rule 56 on the claims against Defendant Koenigsmann in his individual capacity.  Because those claims have been dismissed under Rule 12(b)(6), Defendants' Motion for Summary Judgment is denied as moot.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction (ECF No. 6) is DENIED, Defendant Dolan's Motion to Join the Motion to Dismiss (ECF No. 26) is GRANTED, Defendants' Motion to Dismiss (ECF No. 23) is GRANTED in part and DENIED in part, and Defendants' Motion for Summary Judgment (ECF No. 23) is DENIED.


IT IS SO ORDERED.

Dated: March 16, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court